**JURY TRIAL DEMANDED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Robert Silverstein,

        Plaintiff,

  v.

Imperium Partners Group, LLC, Imperium GP, LLC, Imperium Advisers, LLC, Imperium Specialty Finance Fund, L.P., John C. Michaelson, and WeiserMazars LLP,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INDEX NO. _____

**COMPLAINT**

Plaintiff Robert Silverstein, by his attorneys, Creizman PLLC, for his complaint, alleges as follows:

## INTRODUCTION

      Plaintiff was one of the largest investors in a hedge fund, Imperium Specialty Finance Fund, L.P. (the "Fund"), having invested approximately $3 million in the Fund, the vast bulk of his liquid net worth. The Fund was managed by Plaintiff's cousin, Jeffrey Devers, and Defendant John Michaelson through various entities under the banner of Imperium Partners Group LLC. After investing in the Fund for over four years, Plaintiff learned that Devers and Michaelson were engaged in a bitter dispute that resulted in Devers leaving the Fund. Plaintiff determined that he no longer wished to remain invested in the Fund without Devers managing it and thus sought to obtain a full redemption of his account. With Devers out of the picture and subject to an extensive confidentiality agreement with the Fund, the Fund's management took advantage of their superior access to the Fund's financial information in an attempt to redeem Plaintiff's account at an amount substantially less than it was worth. In depriving Plaintiff of the

funds he was due, the Fund's management, among other things, disavowed previous valuations of the Fund's assets, amounts stated in Fund account statements, and information provided to investors for income tax returns, all of which suggested that the value of Plaintiff's account was far greater than the amount Plaintiff was paid at redemption.  Defendants also did not disclose the fact that they unlawfully diverted assets from the Fund and intentionally undervalued assets to enrich themselves at the expense of Plaintiff and other investors.

Furthermore, the Fund's management violated their fiduciary duties and express promises to Plaintiff, including: (i) understating the value of Plaintiff's account; (ii) paying Plaintiff far less than his account's redemption value; (iii) breaching agreements with Plaintiff; (iv) failing to keep adequate books and records; (v) denying Plaintiff access to inspect and review the Fund's records as required by law; (vi) applying inconsistent, unsound, and self-serving valuations to the Fund's assets in order to minimize the value of Plaintiff's account to their benefit; (vii) unnecessarily delaying the payment of funds owed Plaintiff; (viii) unnecessarily delaying the provision of information Plaintiff required to complete his income tax returns; and (ix) disclosing Plaintiff's personal, nonpublic financial information in a litigation without affording him prior notice, in violation of the Fund's privacy policies, causing Plaintiff significant legal expense and embarrassment.

Plaintiff brings this action seeking damages caused by Defendants' misconduct.

## PARTIES

1) Plaintiff Robert Silverstein is a resident of the State of California.

2) At all relevant times, Defendant Imperium Partners Group, LLC ("Imperium Partners"), was an investment management firm.  Imperium Partners offered qualified individuals the opportunity to invest in a hedge fund, Defendant Imperium Specialty Finance Fund, L.P. (the "Fund").  The Fund was managed by entities affiliated with Defendant Imperium Partners,

2

Defendant Imperium GP, LLC ("Imperium GP"), as the "General Partner," and Defendant Imperium Advisers, LLC, d/b/a Imperium Advisors, LLC ("Imperium Advisers"), as the "Investment Manager". Imperium Partners, Imperium GP, Imperium Advisers, and the Fund herein shall be referred to collectively as "Imperium" or the "Imperium Defendants."

3) At all relevant times, the Imperium Defendants were formed under the laws of the State of Delaware and maintained their principal place of business in the State of New York.

4) During all relevant times, Defendant John C. Michaelson was a Managing Partner of Imperium Partners and a principal officer of all the Imperium entities.

5) Defendant WeiserMazars LLP is a citizen of the States of New York and Connecticut.

## JURISDICTION AND VENUE

6) Jurisdiction is proper in this action because the Fund's Limited Partnership Agreement (the "Fund Agreement"), which Plaintiff and the Imperium Defendants signed, provides that "each of the parties submits to the non-exclusive jurisdiction of the courts of the . . . United States having jurisdiction in the State of New York." Jurisdiction also is conferred on this court by 28 U.S.C. § 1332 because: (i) the Plaintiff is a citizen of a different state than Defendants; and (ii) the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

7) Venue is proper in this district because each party to the Fund Agreement, including Plaintiff and Imperium Defendants, "agree[d] not to raise and waive[d] any objection or defense based upon venue of any [federal court in the State of New York] or based upon *forum non conveniens*." (Ex. A, ¶ 9.6).

## STATEMENT OF FACTS

8) From September 2006 through July 2007, Plaintiff invested a total of $3 million in the Fund pursuant to the terms of the Fund Agreement and certain subscription documents that Plaintiff executed (the "Subscription Documents"). At the time, Defendant Michaelson and Plaintiff's cousin, Jeffrey Devers, were Managing Partners of Imperium. From 2006 through 2009, the Fund reported positive earnings, averaging about 10.84% each year.

9) In or about December 2010, Defendant Michaelson and Devers decided to end their business relationship, and negotiated an agreement under which Devers would terminate his ownership of, and involvement in, Imperium in exchange for a buyout of his interests. The buyout payment was based on a formula tied to the value of the Fund's assets as determined by the Fund's Trustee and agreed upon by Michaelson and Devers. At Michaelson's insistence, the buyout agreement required that Plaintiff's interest in the Fund was to be fully redeemed as of December 31, 2010. Plaintiff was not informed that Michaelson required that Plaintiff's interest in the Fund be fully redeemed as a condition of the Devers buyout agreement. When Plaintiff learned that Devers was leaving the Fund, however, he independently, on his own initiative, advised Imperium that he wanted his account fully redeemed as of December 31, 2010.

10) With Devers out of the Fund, Defendant Michaelson sought to buy out Plaintiff, one of the Fund's largest investors, at an amount well below the true value of Plaintiff's account. Defendants did not disclose to Plaintiff that the Fund had certain assets, including corporate entities that owned valuable intellectual property, that Defendants intentionally undervalued and siphoned from the Fund in violation of their fiduciary duties to Plaintiff and other investors.

4

11) Based on the value of the Fund's assets determined by the Fund's Trustee and which Michaelson and Devers had agreed upon, the value of Plaintiff's account in the Fund as of December 31, 2010, was approximately $3.2 million. In fact the value of Plaintiff's account was substantially higher than $3.2 million because, unbeknownst to Plaintiff, Defendants misappropriated valuable corporate assets from the Fund and undervalued others.

12) On February 23, 2011, William Steward, the CFO of Imperium, provided Plaintiff with a form of acknowledgement that required Plaintiff to agree that the value of the full redemption of his Fund account was $2.562 million. That figure was over $600,000 less than the amount the Trustee had determined, and Michaelson and Devers agreed, was the value of Plaintiff's account. That amount was also substantially less than the true value of the account because it did not account for the value of the corporate assets unlawfully misappropriated from the Fund and of the corporate assets in the Fund whose value Defendants had grossly and intentionally understated.

13) Plaintiff disputed Defendants' valuation of his account as mathematically impossible and Steward agreed. Indeed, Steward admitted that the value of Plaintiff's account was at least $2.99 million as of March 31, 2010, and that the Fund had earned profits for the balance of the year. Furthermore, Steward either was unaware or did not disclose that Defendants had substantially understated the value of certain corporate assets held by the Fund and had unlawfully misappropriated others.

14) Devers also saw the proposed acknowledgment, and informed the Imperium Defendants that based on the asset valuations provided by the Fund's Trustee and agreed upon by Devers and Michaelson, Plaintiff's account was worth at least $3.2 million. The Imperium Defendants,

however, refused to pay Plaintiff $3.2 million, let alone an amount reflecting the true value of his Fund account.

15) Instead, in an effort to delay and avoid fully redeeming Plaintiff's account, the Imperium Defendants insisted that the value of the Fund's assets had yet to be determined by its outside auditors. Plaintiff distrusted Defendant Michaelson and did not believe he had the ability to manage the Fund's investments. With the bulk of his liquid net worth invested in the Fund, Plaintiff was presented with a take-it-or-leave-it offer, for all practical purposes, he was in no position to refuse: a "partial redemption" of his account subject to the completion of the audit of the Fund; at the completion of the audit, the Fund's auditors agreed that the Fund would provide a "true up" payment representing the difference between the full value of Plaintiff's account as of December 31, 2010 and the "partial redemption" payment.

16) Plaintiff thus signed the form of acknowledgement proposed by Defendants. In doing so, Plaintiff reasoned that he was familiar with, and trusted the Fund's then-auditors, EisnerAmper LLP, which had audited the Fund for several years. Furthermore, Plaintiff had succeeded in demanding a "partial redemption" of $2.99 million, which Plaintiff demonstrated to the Imperium Defendants -- and the Imperium Defendants admitted -- represented the minimum value of Plaintiff's Fund account as of March 31, 2010.

17) Based on the Imperium Defendants' representations that the Fund's assets had appreciated since March 31, 2010, when Plaintiff's account was at least $2.99 million, it was apparent at the time the February 2011 Redemption Agreement was executed that both the Imperium Defendants and Plaintiff anticipated that Plaintiff would ultimately receive a "true up" payment. Indeed, the terms of the Redemption Agreement indicated that it was

mathematically impossible for there to be anything other than a "true up" payment to Plaintiff at the close of the Fund's audit.

18) Months passed by as Plaintiff waited for the results of the Fund's audit. Yet by the April 2011 income tax deadline, the audit had not been completed and the Imperium Defendants did not give the Fund's investors, also called "limited partners," the required IRS Partnership Form 1065, Schedule K-1 statement of partnership income ("K-1").

19) It took the Imperium Defendants more than five additional months, until late September 2011, to provide Plaintiff with his 2010 K-1, just in time for the October 2011 income tax extension deadline. During that five-month period, the Fund's longtime outside auditors, EisnerAmper LLP, refused to sign off on the 2010 audit of the Fund. The Imperium Defendants did not explain to Plaintiff why EisnerAmper refused to sign off on the audit.

20) After EisnerAmper resigned from the 2010 audit, the Imperium Defendants retained another auditor, WeiserMazars LLP, to complete it. According to Plaintiff's 2010 K-1 prepared by WeiserMazars, the value of Plaintiff's account was $3.246 million, which was roughly consistent with Plaintiff's Fund account statements, the asset valuations issued by the Funds Trustee and which Devers and Defendant Michaelson had agreed upon, and the Fund's average returns over the previous three years.

21) In light of the 2010 K-1, Plaintiff demanded that the Imperium Defendants provide him his "true up" payment of $253,889.90, reflecting the difference between the value of his Fund account as set forth in the K-1 and the "partial redemption" payment paid to Plaintiff under the February 2011 Redemption Agreement. The Imperium Defendants, however, refused to do so, without explanation.

22) In November 2011, Plaintiff and his accountant contacted an audit manager at WeiserMazars who worked on the Fund's audit. The WeiserMazars manager confirmed that the audit of the Fund was completed and that the capital account set forth in the K-1 was the correct capital account under the audit. Armed with this representation, Plaintiff again demanded his "true up" payment.

23) The Imperium Defendants responded that, in fact, WeiserMazars had not completed the audit at the time it provided Plaintiff with his 2010 K-1, and that the auditors had subsequently completed their audit. According to the Imperium Defendants, under the auditor's final determination, the value of Plaintiff's Fund account as of December 31, 2010 was less than the $3.2 million that: (i) the Fund's auditors set forth in the 2010 K-1; (ii) the Imperium Defendants themselves had conceded was the value of Plaintiff's account at year-end 2010; and (iii) Plaintiff's Fund account statements issued by the Fund's Trustee from 2010 consistently listed as the value of Plaintiff's account.

24) Not only did the Imperium Defendants assert that Plaintiff's Fund account was less than $3.2 million as of December 31, 2010, they also contended that the value of Plaintiff's Fund account at year-end 2010 was *less than the $2.99 million "partial redemption" payment Plaintiff received under the February 2011 Redemption Agreement*. This contention was implausible given that Defendants previously had conceded the $2.99 million partial redemption payment was the *minimum* value of Plaintiff's Fund account as of March 31, 2010, and that the Fund had earned profits over the balance of 2010.

25) Incredibly, according to the Imperium Defendants, Plaintiff actually owed the Fund money, a scenario that was never contemplated by – and, indeed, that was mathematically impossible under the February 2011 Redemption Agreement, drafted by the Defendants themselves.

26) The Imperium Defendants' contention also was flatly inconsistent with: (i) the Imperium Defendants' prior representations that the Fund's assets appreciated during 2010; and (ii) Plaintiff's Fund account statements issued by the Fund's Trustee reflecting that the Fund's assets appreciated during 2010. Moreover, the Defendants had not disclosed that they had unlawfully misappropriated corporate assets from the Fund and substantially and fraudulently understated the value of other corporate assets remaining in the Fund.

27) In response to Plaintiff's protests, counsel for the Imperium Defendants provided a letter purportedly drafted by a WeiserMazars auditor, dated November 25, 2011, contending that the value of Plaintiff's Fund Account was less than the amount paid to Plaintiff under the February 2011 Redemption Agreement.

28) Plaintiff demanded from the Imperium Defendants an accounting and a detailed explanation of the auditor's revised calculation and the auditor's underlying assumptions and reasoning in reaching this determination. In addition, for the purpose of determining the basis of the Imperium Defendants' new calculation of his Fund account as of December 31, 2011, Plaintiff, also requested, among other things: (i) whether the Imperium Defendants applied the same valuation methodology to determine the value of the accounts of other Fund investors; (ii) a detailed reconciliation of the book value of Plaintiff's account from the beginning of his $3 million investment through year-end 2010; (iii) a detailed reconciliation between the book value and tax value of his account; and (iv) confirmation that the information on the K-1 supplied to the IRS was erroneous.

29) Despite their fiduciary duties to Plaintiff, the Imperium Defendants have refused to provide Plaintiff with the information requested.

30) As an inducement to Plaintiff to invest in the Fund, the Imperium Defendants promised that they would not share personal, nonpublic information about the Fund's investors with unaffiliated third parties without providing notice to the investors. The Imperium Defendants' promise of confidentiality is set forth in the Fund Agreement and in its Privacy Policy, both of which the Imperium Defendants and Plaintiff executed. (*See* Ex. A ¶2.9, Ex. B, Ex. E).

31) Despite the Imperium Defendants' express promise not to disclose investors' personal information without advance notice. In 2011, the Fund produced personal, nonpublic information concerning Plaintiff in a divorce action without a confidentiality agreement and without first notifying Plaintiff.

32) Plaintiff expended legal fees in an effort to keep the information confidential and suffered distress and embarrassment as a result of the Imperium Defendants' disclosure.

### FIRST CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against the Imperium Defendants)

33) Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 29 as if fully set forth herein.

34) The Imperium Defendants owed the Fund and its investors a fiduciary duty to act in the best interest of the Fund and the Fund's investors. These duties include the duties of good faith and fair dealing, loyalty, and care.

35) The Imperium Defendants breached their fiduciary duties to Plaintiff by:

    a. failing to keep the Fund's books and records in a responsible manner;

    b. applying an inconsistent, unsound, and self-serving valuation methodology in concluding the value of Plaintiff's Fund account as of year-end 2010;

    c. pressuring the Fund's outside auditors to state a lower value for Plaintiff's Fund account as of year-end 2010 than was actually the case, or negligently, recklessly, or willfully providing the outside auditors with false and misleading information that led to the auditor's false and inaccurate valuation;

    d. negligently, recklessly, or willfully redeeming, and attempting to redeem, Plaintiff's Fund account at a amount lower than the true value of the account, to the Imperium Defendants' benefit and Plaintiff's detriment;

    e. negligently, recklessly, or willfully delaying the full redemption of Plaintiff's account, to the Imperium Defendants' benefit and Plaintiff's detriment;

    f. refusing to provide Plaintiff with a detailed accounting and explanation of the basis of their methodology in determining the final value of Plaintiff's account as of year-end 2010;

    g. negligently, recklessly, or willfully misleading Plaintiff as to the true value of his Fund account throughout Plaintiff's tenure as a limited partner of the Fund, to the Imperium Defendants' benefit and Plaintiff's detriment.

36) As a result of Imperium Defendants' numerous breaches of their fiduciary duties, Plaintiff has suffered damages.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (Against the Imperium Defendants)

37) Plaintiff and the Imperium Defendants were parties to the February 2011 Redemption Agreement.

38) The Imperium Defendants breached the February 2011 Redemption Agreement by:

11

a. failing to tender to Plaintiff a "true up" payment as contemplated under the February 2011 Redemption Agreement;

b. failing to perform an accurate valuation of Plaintiff's Fund account as of year-end 2010;

c. failing to tender to Plaintiff an amount equal to the full value of Plaintiff's Fund account as of year-end 2010;

d. failing to comply with the implied covenant of good faith and fair dealing.

## THIRD CAUSE OF ACTION
## Fraud
## (Against the Imperium Defendants)

40) Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 39 as if fully set forth herein.

41) The Imperium Defendants made the following material false misrepresentations or omissions to Plaintiff:

a. The Imperium Defendants falsely represented to Plaintiff that they had not agreed (or omitted that they had agreed) that the value of Plaintiff's Fund account as of year-end 2010 was approximately $3.2 million;

b. The Imperium Defendants falsely represented to Plaintiff that they required an audit to determine the actual value of Plaintiff's account as of year-end 2010;

c. The Imperium Defendants falsely represented to Plaintiff that the outside auditors concluded the value of Plaintiff's account as of year-end 2010 was different than the amount set forth in Plaintiff's 2010 K-1;

d. The Imperium Defendants falsely represented the accuracy of the 2010 K-1;

  e. The Imperium Defendants falsely represented or omitted the reasons for the outside auditor's final valuation of Plaintiff's Fund account as of year-end 2010;

  f. The Imperium Defendants falsely represented the accuracy of Plaintiff's Fund account statements issued by the Fund's Trustee;

  g. The Imperium Defendants falsely represented or omitted the actual value of Plaintiff's Fund account as of year-end 2010.

42) The Imperium Defendants knew those representations were false, or were reckless as to their truth or falsity, at the time they were made.

43) The Imperium Defendants made those false representations to induce Plaintiff's reliance on the statements.

44) Plaintiff's reliance on the Imperium Defendants' misrepresentations was reasonable.

45) The Imperium Defendants are liable for all harm caused to Plaintiff as a result of their false representations.

## FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
### (Against the Imperium Defendants)

46) Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 45 as if fully set forth herein.

47) The Imperium Defendants were aware and expected that Plaintiff would rely on each of their misrepresentations and omissions as set forth in Paragraph 41 above.

48) The Imperium Defendants were negligent and careless in making the misrepresentations and omissions set forth in Paragraph 41 above.

49) Plaintiff acted on these misrepresentations and omissions to his detriment.

50) Plaintiff suffered damages as a result.

## FIFTH CAUSE OF ACTION
### Professional Malpractice and Negligence
### (Against the Imperium Defendants)

51) Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 50 as if fully set forth herein.

52) The Imperium Defendants, owing a duty to the Fund's investors, negligently departed from accepted standards of practice in the hedge fund industry by:

   a. failing to keep the Fund's books and records in a responsible manner;

   b. applying an inconsistent and unsound valuation methodology in concluding the value of Plaintiff's Fund account as of year-end 2010;

   c. providing false and misleading information to the Fund's outside auditors in connection with their audit of the Fund's assets as of year-end 2010;

   d. failing to adequately calculate the value of Plaintiff's Fund account as of year-end 2010;

   e. delaying the full redemption of Plaintiff's Fund account;

   f. delaying providing Plaintiff with his 2010 K-1;

   g. reporting inaccurate amounts in Fund account statements purporting to represent the value of Plaintiff's fund account.

53) The Imperium Defendants' departures from accepted standards in the hedge fund industry were a proximate cause of Plaintiff's damages.

## SIXTH CAUSE OF ACTION
### Fraud-Aiding and Abetting
### (Against John Michaelson and WeiserMazars

54) Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 53.

55) Defendants Michaelson and WeiserMazars were aware of the fraud the Imperium Defendants perpetrated on Plaintiff, and substantially assisted the Imperium Defendants in committing the fraud.

### SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Defendants Michaelson and WeiserMazars)

56) Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 55.

57) Defendants Michaelson and WeiserMazars were aware of the Imperium Defendants' fiduciary duty to Plaintiff, and substantially assisted the Imperium Defendants' breach of that fiduciary duty to Plaintiff, causing Plaintiff damages as a result.

### SEVENTH CAUSE OF ACTION
### Tortious Interference With A Contractual Relationship
### (Against Defendants Michaelson and WeiserMazars)

58) Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 57.

59) Defendants Michaelson and WeiserMazars were aware of the February 2011 Redemption Agreement, and they intentionally procured the Imperium Defendants' breach of the February 2011 Redemption Agreement, causing Plaintiff damages as a result.

### EIGHTH CAUSE OF ACTION
### Accountant Malpractice
### (Against Defendant WeiserMazars)

60) Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 59.

61) Defendant WeiserMazars engaged in a negligent departure from the accepted standards of accounting practice, and that departure was a proximate cause of Plaintiff's injury.

## NINTH CAUSE OF ACTION
## Breach of Contract
### (Against the Imperium Defendants)

62) Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 61 as if fully set forth herein.

63) The Fund Agreement and the Fund's privacy policy as set forth in its Subscription Documents required Defendants to keep personal, nonpublic financial information about the Fund's investors confidential from unaffiliated third parties and not to disclose such information without first providing notice to their investors.

64) Plaintiff materially relied on the confidentiality provisions in the Fund Agreement and the Fund's privacy policy in deciding to invest in the Fund.

65) Defendants violated the confidentiality provisions of the Fund Agreement and the Fund's privacy policy by disclosing personal, nonpublic financial information concerning Plaintiff to unaffiliated third parties in a litigation, without first providing notice to Plaintiff.

66) As a result of Defendants' failure to provide the required notice to Plaintiff, Plaintiff suffered monetary damages in attempting through legal action and other lawful means to conceal from the public the personal financial information disclosed in the litigation.

67) Plaintiff also suffered reputational damages and embarrassment as a result of the Defendants' unauthorized disclosure without prior notice.

68) As a result of Defendants' failure to provide notice, Plaintiff also was deprived of the benefit of his bargain in entering into an agreement with Defendants to invest in the Fund.

## TENTH CAUSE OF ACTION
### Breach of Fiduciary Duties of Confidentiality, Loyalty, and Good Faith

69) Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 68 as if fully set forth herein.

70) Defendants owed Plaintiff fiduciary duties of confidentiality, loyalty, and good faith not to disclose confidential information without providing him with advance notice to enable Plaintiff to protect his privacy interests.

71) Defendants breached their fiduciary duties to Plaintiff by disclosing personal, nonpublic financial information about him to unaffiliated third parties in a litigation.

72) As a direct result of result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

a) An order awarding Plaintiff damages, including punitive damages, in the amount to be determined at trial.

b) An order awarding Plaintiff the costs of this suit, including attorneys' fees.

c) An order awarding Plaintiff such other and further relief that this Court deems necessary and appropriate.

Dated: New York, New York

January 25, 2013

                Respectfully submitted,

                **CREIZMAN LLC**

        By:      /S/ Eric M. Creizman

                Eric M. Creizman (EC-7684)
                Caroline J. Polisi (CJ-5655)
                565 Fifth Avenue, 7th Floor
                New York, New York 10017
                Telephone: (212) 972-0200
                Facsimile: (646) 200-5022
                Email: ecreiz@creizmanllc.com

                *Attorneys for Plaintiff Robert Silverstein*